UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALBERT PETE VEENSTRA, III,<br><br>    Plaintiff,<br><br> v.<br><br>BRAD LITTLE; IDAHO STATE BOARD OF CORRECTION GOVERNING MEMBERS; JOSH TEWALT; JAY CHRISTENSEN; LIEUTENANT GREENLAND; and STATE OF IDAHO,<br><br>    Defendants. | Case No. 1:20-cv-00210-BLW<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

   The Clerk of Court conditionally filed Plaintiff Albert Pete Veenstra, III's Complaint as a result of Plaintiff's status as an inmate.[1] The Court now reviews the Complaint to determine whether it should be summarily dismissed in whole or in part under 28 U.S.C. § 1915A. Having reviewed the record, and otherwise being fully informed, the Court enters the following Order directing Plaintiff to file an amended complaint if Plaintiff intends to proceed.

**1. Screening Requirement**

   The Court must review complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity, as well as

---

[1] This case was initially filed as a multi-plaintiff lawsuit but was then severed into separate lawsuits, with Plaintiff Veenstra as the only plaintiff in this case.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 1

complaints filed in forma pauperis, to determine whether summary dismissal is appropriate. The Court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

**2.     Pleading Standard**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[D]etailed factual allegations" are not required, but a plaintiff must offer "more than ... unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks omitted).

A court is not required to comb through a plaintiff's exhibits or other filings to determine if the complaint states a plausible claim. Therefore, the "letter/affidavit"—as well as other documents that are interspersed within the Complaint, such as a copy of a page that was apparently filed in another lawsuit, *Balla v. IBOC*, Case No. 1:81-cv-01165-BLW (*see Compl.*, Dkt. 1, at 8)—will not be reviewed by the Court. *See* General

INITIAL REVIEW ORDER BY SCREENING JUDGE - 2

Order No. 342, *In re: Procedural Rules for Prisoner Civil Case Filings and Prisoner E-Filing Program*, subsection A.1.c. ("No affidavits may be attached to a complaint or any type of amended complaint.").

### 3.     Factual Allegations

Plaintiff is a prisoner in the custody of the Idaho Department of Correction ("IDOC"). Plaintiff challenges the conditions of confinement at the Idaho State Correctional Center ("ISCC").

Plaintiff alleges that the State of Idaho has failed to provide adequate funding for the operation of ISCC, resulting in "enforced ildness [sic] and more prison violence, less recreation, increased recidivism … [and] under staffing." *Compl.* at 14. Plaintiff also claims that the State

> has failed to provide an effective alternative to incarceration and has deliberately allowed the population of the ISCC and IDOC as a whole, with the Commissions of Pardon and Parole, to increase beyond the capacity for which ISCC Blocks "B" "C" "H", were originally built for, thereby causing overcrowded conditions to exist and triple and quadruple[] cubicles in blocks "B" "C," and place cots in "H" block.

*Id*. Specifically, B and C Blocks were designed for a total of 504 inmates, but IDOC presently houses 824 prisoners in those blocks. Block H evidently was designed to be a "worker building for prisoners." *Id*.

Inmates at ISCC have complained of the overcrowding issue to prison officials by way of the administrative grievance process. For example, Plaintiff has informed prison officials that overcrowding has resulted in "a denial of equal protection and a cruel and

INITIAL REVIEW ORDER BY SCREENING JUDGE - 3

unusual punishment." *Id*. at 15. Prison officials recognized that the affected blocks are indeed crowded, but they have assured Plaintiff that it is temporary. *Id*. at 15–16. According to Plaintiff, ISCC staff in C Block "do not forward concern forms related to overcrowding to maintenance." *Id*. at 14.

Plaintiff also complains that overcrowding in the affected blocks creates a fire hazard, as there are only four electrical outlets to service 24 inmates' electric devices. *Id*. at 14.

Prison officials also allegedly (1) fail to provide indigent inmates with "adequate clothing including foot wear for the winter months," (2) house inmates in blocks that are over 150% capacity, and (3) fail "to maintain sanitary toilets and showers in the overcrowded blocks." *Id*. at 20. Plaintiff claims that prison officials have made "a concerted and systematic effort" to deprive ISCC inmates of their constitutional rights. *Id*. at 19.

**4.   Discussion**

Plaintiff has not alleged sufficient facts to proceed with the Complaint. The Court will, however, grant Plaintiff 60 days to amend the Complaint. Any amended complaint should take into consideration the following.

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To be liable under § 1983, "the defendant must possess a purposeful, a knowing, or

INITIAL REVIEW ORDER BY SCREENING JUDGE - 4

possibly a reckless state of mind." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015). Negligence is not actionable under § 1983, because a negligent act by a public official is not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

Prison officials generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045.

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging that a defendant (1) "set[] in motion a series of acts by others"; (2) "knowingly refus[ed] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury"; (3) failed to act or improperly acted in the training, supervision, or control of his subordinates"; (4) "acquiesc[ed] in the constitutional deprivation"; or (5) engag[ed] in

"conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1205–09.

A claim that a supervisor or training official failed to adequately train subordinates ordinarily requires that, "in light of the duties assigned to specific officers or employees[,] the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the [supervisor or training official] can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). That is, to maintain a failure-to-train claim, a plaintiff must allege facts showing a "pattern of violations" that amounts to deliberate indifference. *Connick v. Thompson*, 563 U.S. 51, 72 (2011).

Likewise, "a failure to supervise that is sufficiently inadequate may amount to deliberate indifference" that supports a § 1983 claim, but there generally must be a pattern of violations sufficient to render the need for further supervision obvious. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal quotation marks omitted). That is, if a supervisory or training official had "knowledge of the unconstitutional conditions" through such a pattern of violations—including knowledge of the "culpable actions of his subordinates"—yet failed to act to remedy those conditions, that official can be said to have acquiesced "in the unconstitutional conduct of his subordinates" such that a causal connection between the supervisor and the constitutional violation is plausible. *Starr*, 652 F.3d at 1208.

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

Plaintiff asserts claims under the Eighth and Fourteenth Amendments. *Compl.* at 19–20.[2]

### A.     *Eighth Amendment Claims*

The Eighth Amendment to the United States Constitution protects prisoners against cruel and unusual punishment. "[T]he Constitution does not mandate comfortable prisons, and prisons … [that] house persons convicted of serious crimes[] cannot be free of discomfort." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). However, although prison conditions may be restrictive—even harsh—without violating the Eighth Amendment, prison officials are required to provide prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety. *Id.* at 347; *Hoptowit v. Ray,* 682 F.2d 1237, 1246 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).

---

[2] Plaintiff also cites the Sixth Amendment. *Compl.* at 20. However, that amendment—which protects a criminal defendant's right to a speedy and public trial by an impartial jury, the right to confrontation and compulsory process, and the right to the assistance of counsel—is not implicated by the allegations in the Complaint.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 7

To state a claim under the Eighth Amendment, prisoners must show that they are "incarcerated under conditions posing a substantial risk of serious harm," or that they have been deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires the plaintiff to satisfy both (1) an objective standard, "that the deprivation was serious enough to constitute cruel and unusual punishment," and (2) a subjective standard, that the defendant acted with "deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

As for the objective prong of the analysis, "[n]ot every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Rather, the deprivation alleged must be objectively sufficiently harmful or, in other words, sufficiently "grave" or "serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

With respect to the subjective prong of an Eighth Amendment violation, "deliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley*, 475 U.S. at 319.

To exhibit deliberate indifference, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). Moreover, even prison officials who *did* actually know of a substantial risk to inmate health or safety will not be liable under § 1983 "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

The fact that a prison is overcrowded or understaffed "has no constitutional significance standing alone." *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 471 (9th Cir. 1989). Rather, "[o]nly when overcrowding is combined with other factors such as violence or inadequate staffing" does overcrowding rise to the level of an Eighth Amendment violation. *Id.*; *see also Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981) (holding that double-celling inmates is not a per se constitutional violation).

More particularly, as the Ninth Circuit has explained:

> In analyzing claims of Eighth Amendment violations, the courts must look at discrete areas of basic human needs. An institution's obligation under the [E]ighth [A]mendment is at an end if it furnishes sentenced prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety.
>
> In assessing claims of Eighth Amendment violations, and equally importantly, in tailoring a proper remedy, we must analyze each claimed violation in light of these requirements.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 9

> Courts may not find Eighth Amendment violations based on the totality of conditions at a prison. There is no Eighth Amendment violation if each of these basic needs is separately met. If a challenged condition does not deprive inmates of one of the basic Eighth Amendment requirements, it is immune from Eighth Amendment attack. A number of conditions, each of which satisfy Eighth Amendment requirements, cannot in combination amount to an Eighth Amendment violation.

*Hoptowit*, 682 F.2d at 1246–47 (emphasis added) (internal citations, quotation marks and alterations omitted). As a result, a prisoner cannot state a plausible Eighth Amendment claim based simply on overcrowding.

Plaintiff's Complaint does not state an Eighth Amendment claim upon which relief may be granted. Plaintiff's allegations plausibly establish only that certain housing blocks at ISCC are overcrowded, which is insufficient to state a claim of cruel and unusual punishment. As for the risk of fire resulting from a paucity of electrical outlets, the allegations do not give rise to a reasonable inference that the fire hazard is substantial. There are no allegations as to how many inmates use electrical outlets at any given time, nor could a reasonable factfinder infer that prison officials have not instituted a policy governing the use of such outlets so that the risk of fire may be reduced. Finally, Plaintiff makes generalized accusations that ISCC is understaffed, that violence has increased, and that the toilets and showers are unsanitary. But these allegations are simply too vague and conclusory to support a reasonable inference that any Defendant has acted with deliberate indifference to inmate health and safety.

For these reasons, Plaintiff may not proceed on an Eighth Amendment claim at this time.

### B.     *Fourteenth Amendment Claims*

    i.     Due Process Claims

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. This clause safeguards two rights. The right to procedural due process prohibits the government from depriving an individual of a liberty or property interest without following the proper procedures for doing so. *See, e.g., Wolff v. McDonnell*, 418 U.S. 539, 558-66 (1974). Within the prison context, liberty interests are "generally limited to freedom from restraint which … imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

The right to substantive due process protects individuals from being deprived of certain interests notwithstanding the procedures followed. *Blaylock v. Schwinden*, 862 F.2d 1352, 1354 (9th Cir. 1988). A substantive due process violation is one which "shocks the conscience." *Wood v. Ostrander*, 879 F.2d 583, 591 n.8 (9th Cir. 1989). It occurs in a situation in which "the government's action was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 864 F.2d 1475, 1484 (9th Cir. 1989) (internal quotation marks omitted).

To the extent that Plaintiff's due process claims are aimed at the overcrowding issue—or any other conditions-of-confinement issue—they are more appropriately analyzed under the Eighth Amendment, as the Court has done above. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding that, where a particular constitutional

INITIAL REVIEW ORDER BY SCREENING JUDGE - 11

mendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims"). To the extent Plaintiff alleges a due process violation based on the alleged failure of prison staff to forward overcrowding concern forms to maintenance, Plaintiff does not have a liberty interest in a particular prison employee receiving his concern forms. Therefore, Plaintiff's due process claims are implausible.

      ii.      <u>Equal Protection Claims</u>

The Fourteenth Amendment also includes the Equal Protection Clause, which prohibits government officials from engaging in arbitrary discrimination. The purpose of the Equal Protection Clause is "to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (internal citation and quotation marks omitted). Under the Equal Protection Clause, "all persons similarly circumstanced shall be treated alike" by governmental entities. *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920). However, "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S. 141, 147 (1940).

And, even where similarly situated persons *are* treated differently by the state, "state action is presumed constitutional and 'will not be set aside if any set of facts reasonably may be conceived to justify it.'" *More v. Farrier*, 984 F.2d 269, 271 (9th Cir.

1993) (quoting *McGowan v. Maryland*, 366 U.S. 420, 426 (1961)). Absent evidence of invidious discrimination, the federal courts should defer to the judgment of prison officials. *See id*. at 277; *Youngbear v. Thalacker*, 174 F. Supp. 2d 902, 916 (D. Iowa 2001) ("There can be no 'negligent' violations of an individual's right to equal protection.... There is no evidence from which the court may infer that the defendants' asserted reasons for delaying the construction of a sweat lodge at the [prison] were a pretext for discrimination.").

Equal protection claims alleging disparate treatment or classifications generally are subject to a heightened standard of scrutiny if they involve a "suspect" or "quasi-suspect" class, such as race, national origin, or sex, or when they involve a burden on the exercise of fundamental personal rights protected by the Constitution. *See, e.g., City of Cleburne v. Cleburne Living Ctr., Inc*., 473 U.S. 432, 440 (1985). Otherwise, equal protection claims are subject to a rational basis inquiry, in which case "the Equal Protection Clause requires only a rational means to serve a legitimate end." *Id*. at 442.

Because inmates are not a protected class under the Equal Protection Clause, their equal protection claims are subject to rational basis review. *Webber v. Crabtree*, 158 F.3d 460, 461 (9th Cir. 1998). In a rational basis analysis, the relevant inquiry is whether the defendants' action is "patently arbitrary and bears no rational relationship to a legitimate governmental interest." *Vermouth v. Corrothers*, 827 F.2d 599, 602 (9th Cir. 1987) (quotation omitted). A plaintiff can prevail under rational basis review only if (1) he is similarly situated with persons who are treated differently by a governmental official, and

(2) the official has no rational basis for the disparate treatment. Moreover, an additional layer of deference to prison officials is required under *Turner v. Safley*, 482 U.S. 78, 89-91 (1987), which holds that a prison regulation is constitutional so long as it is reasonably related to a legitimate penological purpose. *See Walker v. Gomez*, 370 F.3d 969, 974 (9th Cir. 2004) ("In the prison context, ... even fundamental rights such as the right to equal protection are judged by a standard of reasonableness—specifically, whether the actions of prison officials are reasonably related to legitimate penological interests." (quotation omitted)).

Plaintiff has not alleged a plausible equal protection claim. The Complaint shows that prison officials are aware that some housing blocks are more crowded than others. However, it does not constitute arbitrary and invidious discrimination, in violation of the Equal Protection Clause, to temporarily house more inmates in certain housing blocks while officials attempt to find a long-term solution to the problem.

5.  **Standards for Amended Complaint**

If Plaintiff chooses to amend the Complaint, Plaintiff must demonstrate how the actions complained of have resulted in a deprivation of Plaintiff's constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir. 1980), *abrogated on other grounds by Kay v. Ehler*, 499 U.S. 432 (1991). Plaintiff must also allege a sufficient causal connection between each defendant's actions and the claimed deprivation. *Taylor*, 880 F.2d at 1045; *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss" or to survive screening under 28 U.S.C. §§ 1915 and

INITIAL REVIEW ORDER BY SCREENING JUDGE - 14

1915A. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (internal quotation marks and alteration omitted)).

Rather, for each cause of action against each defendant, Plaintiff must state the following: (1) the name of the person or entity that caused the alleged deprivation of Plaintiff's constitutional rights; (2) facts showing the defendant is a state actor (such as state employment or a state contract) or a private entity performing a state function; (3) the dates on which the conduct of the defendant allegedly took place; (4) the specific conduct or action Plaintiff alleges is unconstitutional; (5) the particular federal constitutional provision (or state law provision) Plaintiff alleges has been violated; (6) facts alleging that the elements of the violation are met—for example, Plaintiff must allege facts satisfying the elements of an Eighth Amendment or equal protection claim; (7) the injury or damages Plaintiff personally suffered; and (8) the particular type of relief Plaintiff is seeking from each defendant.

Further, any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon, attach, or incorporate by reference other pleadings or documents. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir.

1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

Plaintiff must set forth each different factual allegation in a separate numbered paragraph. The amended complaint must be legibly written or typed in its entirety, and it should be clearly designated as the "First Amended Complaint." Plaintiff's name and address should be clearly printed at the top left corner of the first page of each document filed with the Court.

If Plaintiff files an amended complaint, Plaintiff must also file a "Motion to Review the Amended Complaint." If Plaintiff does not amend within 60 days, or if the amendment does not comply with Rule 8, this case may be dismissed without further notice. *See Knapp v. Hogan*, 738 F.3d 1106, 1110 (9th Cir. 2013) ("When a litigant knowingly and repeatedly refuses to conform his pleadings to the requirements of the Federal Rules, it is reasonable to conclude that the litigant simply *cannot* state a claim.").

## ORDER

**IT IS ORDERED:**

1. The Complaint fails to state a claim upon which relief may be granted. Plaintiff has 60 days within which to file an amended complaint as

described above. If Plaintiff does so, Plaintiff must file (along with the amended complaint) a Motion to Review the Amended Complaint. If Plaintiff does not amend within 60 days, this case may be dismissed without further notice. Alternatively, Plaintiff may file a Notice of Voluntary Dismissal if Plaintiff no longer intends to pursue this case.[3]

2. Plaintiff's request for appointment of counsel (contained in the Complaint) and Plaintiff's Third Motion for Appointment of Counsel (contained in Dkt. 19) are DENIED without prejudice. Plaintiff may renew the request for counsel in an amended complaint.

3. Plaintiff's Motion for Leave to Request an Immediate Preliminary/Emergency Permanent Injunction (Dkt. 10) is DENIED.

4. Plaintiff's Motion for Leave to Request the Court to Obtain and Enter into the Record Performance Evaluation Report Dated 01/28/2020 (Dkt. 12) is DENIED.

5. Plaintiff's Motion for Leave to Enter into the Record the Office of Performance Evaluation Report of 2020 "Managing Correctional Capacity" (Dkt. 14) is DENIED.

6. Plaintiff's Motion for Leave to Enter into the Record the Minutes of the Joint Legislative Oversight Committee (Dkt. 15) is DENIED.

---

[3] A voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1) is not a dismissal for frivolity, for maliciousness, or for failure to state a claim upon which relief may be granted and, therefore, does not count as a "strike" under 28 U.S.C. § 1915(g).

7. Because an amended complaint is required for Plaintiff to proceed, Plaintiff's Motion for Leave to Request Appointment of Special Master, Motion for Leave for Court to Reconsider Class Certification, and Motion for Leave to Request the Court to Appoint Class Representatives (Dkts. 19 and 20) are DENIED AS MOOT.

DATED: August 12, 2020

_____
B. Lynn Winmill
U.S. District Court Judge